UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JAMES RIVER COAL COMPANY ) <br> MEDICAL AND DENTAL PLANS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRENDA K. BENTLEY, ) <br> ) <br> Defendant. ) | Civil Action No. 09-13-ART <br><br> **MEMORANDUM OPINION <br> AND ORDER** |

*** *** *** ***

**I.    INTRODUCTION**

On April 21, 2007, a dog attacked and seriously injured the minor son (hereinafter "MB") of Defendant Brenda K. Bentley. R. 1 at 2. At the time, MB's father was a participant in the James River Coal Company's self-funded qualified medical plan ("the Plan"). *Id.* The Plan is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.*; *see* 29 U.S.C. § 1001. Because MB is a dependant of his father, the Plan paid $25,840.88 for MB's medical treatment. R. 1 at 2. MB's mother, Defendant Bentley, later settled a claim against the dog owner for $70,000. *Id.* at 3. Bentley did not reimburse the plaintiff for any of MB's medical expenses. *Id*.

On January 26, 2009, the plaintiff filed suit under ERISA's civil enforcement section, 29 U.S.C. § 1132(a)(3), seeking reimbursement of the $25,840.88 it paid for MB's medical expenses. *See* R. 1. On March 17, 2009, Bentley filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). R. 7. The plaintiff responded, R. 9, and Bentley subsequently replied, R. 11. Following a hearing on June 5, 2009, R. 13, the parties filed briefs regarding how the Court should interpret ambiguities in the Plan's language. *See* R 14; R. 15.

For the reasons stated below, the Court grants the defendant's motion to dismiss.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts the facts in the plaintiff's complaint as true, construes the complaint in light most favorable to the plaintiff, and determines whether no set of facts in support of the claim would entitle the plaintiff to relief. *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008) (citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004)). Further, the party moving for the motion to dismiss has the burden of proving that no claim exists. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Moreover, failing to make a claim in equity under Section 1132(a)(3) of ERISA is not a jurisdictional defect but, rather, is a failure to state a claim upon which relief can be granted. *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 519 (6th Cir. 2006).

## III. ANALYSIS

A plan fiduciary may bring a civil action under ERISA either to obtain equitable relief or to enforce the provisions of the plan. 29 U.S.C. § 1132(a)(3). Thus, the plaintiff is limited to an equitable remedy. The Court must determine whether the plaintiff's remedy is legal or equitable in ruling on the motion to dismiss.

Whether a remedy is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (citing *Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). In *Knudson*, the Supreme Court explained that simply because the remedy sought was restitution—normally an equitable remedy—did not mean that the remedy was necessarily in equity.

*Id.* at 212. Instead, restitution is only an equitable remedy when the plaintiff's claim seeks to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Id.* at 213 (citations omitted). In contrast, restitution is a legal remedy when the plaintiff's claim seeks "to impose personal liability on [the defendant] for a contractual obligation to pay money." *Id.* at 210.

To assert an equitable lien for the purposes of § 1132(a)(3), the ERISA plan must (1) identify a particular fund distinct from the plan member's general assets and (2) specify the particular share of the fund to which the plan is entitled. *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 363-64 (2006) (citing *Barnes v. Alexander*, 232 U.S. 117, 121-23 (1914)).

The Plan provides the following:

### RIGHT OF REIMBURSEMENT

    This section applies when the Participant has recovered damages, by verdict, settlement or otherwise, for an Injury or Sickness (including an occupational Injury or Sickness) caused by a third party. If the Participant has made or in the future may make, such a recovery, including a recovery under a first-party automobile coverage, the Plan will not cover either the reasonable value of the services to treat such an Injury or sickness or the treatment of such an Injury or Sickness.
    However, if the Plan pays for or provides benefits for such an Injury or Sickness, the Participant shall promptly reimburse the Plan when the recovery is received until the Plan has been fully reimbursed for benefits it paid for or provided. Reimbursement shall be made regardless of whether the Participant has been made whole or fully reimbursed by the third party for his damages and regardless of any classification of such recovered proceeds as medical expenses.
    The Participant hereby grants to the Plan a lien in the proceeds of any such recovery. The Participant shall sign and deliver, at the Plan's request, any documents needed to protect this lien.
    The Participant shall cooperate with the Plan, including signing and delivering any documents the Plan reasonably requests to protect its rights of reimbursement, providing any relevant information, and taking such actions as the Plan may otherwise request in order to recover the full amount of benefits provided. The Participant shall not reduce the Plan's right of reimbursement.
    The Plan shall be responsible only for those legal fees and expenses to which

>it agrees in writing.

R. 1, Exh. A.

In light of *Sereboff* and the Plan's terms, the plaintiff cannot seek an equitable remedy from Bentley for the medical expenses paid. The reasons are set forth below.

### A. The First Prong of *Sereboff*: The Particular Fund Requirement

To fulfill the first prong of the *Sereboff* test, the plan must identify a particular fund—separate from the member's general assets. *Sereboff*, 547 U.S. at 364. In addition, that fund must supply the repayment for the benefits the plan paid on behalf of the member. *Id.* To meet this first prong, the Eleventh Circuit held that the plan must specify that the reimbursement be made out of a particular fund—distinct from the beneficiary's general assets–and not simply trigger a general reimbursement obligation based on a settlement, judgment, or other payment relating to the accidental injury or illness. *Popowski v. Parrott*, 461 F.3d 1367, 1374 (11th Cir. 2006).[1]

As in the Mohawk Plan in *Popowski*, the Plan here does not identify a particular fund *from which* the Plan is to be reimbursed. *Compare* R. 1, Exh. A ("[T]he Participant shall promptly reimburse the Plan when the recovery is received until the Plan has been fully reimbursed for benefits it paid for or provided."), *with Popowski*, 461 F.3d at 1371 ("If, however, the Covered Person receives a settlement, judgment, or other payment . . . the Covered Person agrees to reimburse the Plan in full, and in first priority, for any medical expenses paid by the Plan relating to the injury

---

[1] The *Popowski* Court analyzed two different benefit plans under § 1132(a)(3), the Mohawk Plan and the United Distributors Plan. The Eleventh Circuit held that the Mohawk Plan did not meet the requirements for equitable relief due to *Sereboff* but that the United Distributors Plan did. 461 F.3d at 1375-76. The Mohawk Plan is discussed in more detail in this opinion since it is more relevant to the Plan at issue here.

or illness.").

The Plan here differs from the *Sereboff* plan (which the Supreme Court held did permit an equitable remedy), because that plan identified a particular fund from which the reimbursement should be paid. *See Sereboff*, 547 U.S. at 359 ("This provision 'applies when [a beneficiary is] sick or injured as a result of the act or omission of another person or party,' and requires a beneficiary who 'receives benefits' under the plan for such injuries to 'reimburse [Mid Atlantic]' for those benefits *from* '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'") (citations omitted) (emphasis added).

Under the Plan here, a reimbursement is required, when the participant recovers from a third party and the Plan has paid benefits on the participant's behalf. Notably, however, the Plan fails to identify specifically *from where* the reimbursement is to come (*e.g.*, had the plan provided that the recovery was limited to the proceeds recovered from a third party, it would have satisfied the first prong of *Sereboff*). Since the Plan does not identify a fund—distinct from the member's general assets—from which the reimbursement is to be paid, it fails the first prong of *Sereboff*. Therefore, the plaintiff's claim does not seek an equitable remedy as a claim under §1132(a)(3) must.

In this instance, in requiring reimbursement "until the Plan has been fully reimbursed for benefits it paid for or provided" whenever a Plan member recovers from a third party, the reimbursement is not necessarily connected to a specific fund. The Plan does not specify that it is to be reimbursed only from the proceeds of the recovery until it has been fully reimbursed for benefits previously paid. This creates the possibility that a Plan member may receive a recovery from a third party that is less than the benefits paid by the Plan but would nevertheless be required to repay the Plan in full. Because the reimbursement could exceed the recovery in this situation, the

Plan language clearly contemplates recovery out of the Plan member's general assets rather than a particular fund tied to the recovery. Thus, the Plan language creates personal liability on the part of the Plan member for the amount of the benefits rather than an equitable lien or constructive trust on particular property or funds tied to the recovery from the third party.

### B. The Second Prong of *Sereboff:* The Particular Share Requirement

To fulfill the second prong of the *Sereboff* test, the plan must be entitled to reimbursement from only a particular share of a fund. *Sereboff*, 547 U.S. at 364. Because the Plan fails to identify a particular fund which a reimbursement should come from (as the first prong requires), the Plan necessarily fails the second prong of the *Sereboff* test.

Since reimbursement is required "until the Plan has been fully reimbursed for benefits it paid for or provided," the Plan fails to identify a particular share of the fund to which it is entitled. *See Popowski*, 461 F.3d at 1374 (concluding that the Mohawk Plan, " in requiring reimbursement 'in full,' . . . fails to limit recovery to a specific portion of a particular fund"). Similarly, the Plan here allows for reimbursement to come from the Plan member's general assets. Therefore, it follows that the Plan does not limit the reimbursement's source to a particular share of a recovery from a third party.

## IV. CONCLUSION

Because the plaintiff seeks a legal remedy but brought its claim under § 1132(a)(3), which only provides for an equitable remedy, the defendant's motion to dismiss pursuant to Fed R. 12(b)(6) must be granted. Accordingly, it is hereby **ORDERED** the defendant's motion to dismiss, R. 7, is **GRANTED**.

This the 23rd day of July, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge